ELECTRONIC CITATION: 2008 FED App. 0016P (6th Cir.)
File Name: 08b0016p.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | |
|---|---|
| In re:  BETTYE RAMONA ZWOSTA and MICHAEL LEE ZWOSTA,<br><br>                Debtors.<br><br>JP MORGAN CHASE BANK, N.A.,<br><br>                Plaintiff - Appellee,<br><br>       v.<br><br>BETTYE RAMONA ZWOSTA,<br><br>                Defendant - Appellant. | No. 07-8029 |
| In re:  JAMES MITCHELL SETTERS and PAMELA MARIE SETTERS,<br><br>                Debtors.<br><br>JP MORGAN CHASE BANK, N.A.,<br><br>                Plaintiff - Appellee,<br><br>       v.<br><br>JAMES MITCHELL SETTERS<br><br>                Defendant - Appellant. | No. 07-8030 |

Appeals from the United States Bankruptcy Courts
for the Eastern District of Kentucky at Lexington and Covington
Nos. 06-50835 and 06-20532; Adv. Nos. 06-5200 and 06-2092

Argued: May 13, 2008

Decided and Filed: October 22, 2008

Before: PARSONS, RHODES, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

## COUNSEL

**ARGUED:** Steven L. Schiller, Newport, Kentucky, for Appellants. Anthony G. Raluy, FOLEY, BRYANT & HOLLOWAY, Louisville, Kentucky, for Appellee. **ON BRIEF:** Steven L. Schiller, Newport, Kentucky, for Appellants. Anthony G. Raluy, Lisa Koch Bryant, FOLEY, BRYANT & HOLLOWAY, Louisville, Kentucky, for Appellee.

## OPINION

MARCIA PHILLIPS PARSONS, Chief Bankruptcy Appellate Panel Judge. Bettye Ramona Zwosta and James Mitchell Setters ("Debtors") appeal the bankruptcy court's orders denying their motions for summary judgment and granting summary judgments in favor of JP Morgan Chase Bank, N.A. ("Chase") on Chase's complaints seeking judgments of nondischargeability pursuant to 11 U.S.C. § 523(a)(6). Although we conclude that the bankruptcy court correctly determined the legal issue of whether Chase had an interest in the property allegedly injured, we reverse the grants of summary judgment because unresolved issues remain in these cases.[1]

### I. ISSUE ON APPEAL

The general issue raised by this appeal is whether payment of delinquent "trust fund taxes" from the proceeds of a corporation's receivables upon which a creditor holds a properly secured lien constitutes a willful and malicious injury to property of that creditor which is nondischargeable under 11 U.S.C. § 523(a)(6) in the corporate officer's bankruptcy case. To resolve this issue, the legal question of whether Chase held a property interest in the funds used to pay the trust fund taxes must first be determined. If Chase is found to have a property interest, the issues of whether that interest has been injured and, if so, whether such injury was willful and malicious, must be addressed.

---

[1] Chase filed identical nondischargeability actions against both Debtors. Because the two adversary proceedings contained common issues of fact and law, the bankruptcy court entered an order directing the two proceedings to be tried together. We likewise have issued a joint opinion.

## II.   JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to decide this appeal. The United States District Court for the Eastern District of Kentucky has authorized appeals to the Panel, and a final order of the bankruptcy court may be appealed as of right. 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). An order granting summary judgment is a final order. *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007).

The bankruptcy court's final orders granting Chase's motions for summary judgment are reviewed de novo. *Gold v. FedEx Freight East, Inc. (In re Rodriguez)*, 487 F.3d 1001, 1007 (6th Cir. 2007). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *In re Morgeson*, 371 B.R. at 800.

## III.   FACTS

The Debtors owned and operated J.M.S. Nursing Pool, Inc. ("JMS"), which employed nurses and contracted their services to various health care providers. The health care providers were billed directly by JMS for the services of the nurses, and JMS paid the nurses weekly. As the nurses' employer, JMS was responsible for withholding federal and state taxes from the nurses' weekly paychecks.

In April 2003, JMS obtained an installment loan and business line of credit from Chase and executed two promissory notes in connection therewith that were personally guaranteed by the Debtors. To secure repayment of the notes, JMS granted Chase a blanket security interest in its assets, including inventory, chattel paper, accounts, equipment, general intangibles, and the proceeds thereof. Chase properly perfected its security interest by filing a financing statement with the Kentucky Secretary of State. Monthly payments owed on the promissory notes were automatically withdrawn from the checking account that JMS maintained with Chase.

In the third quarter of 2005, JMS began experiencing financial difficulties and was unable to remit all of the taxes withheld from its employees to the Internal Revenue Service ("IRS"). The company's checking account with Chase also became substantially overdrawn. Despite efforts to

resolve its financial difficulties by reducing the size of its operations and closing various offices, JMS was unable to recover and eventually ceased operations in early 2006.

During this same time period, the Debtors sought legal advice from a bankruptcy attorney. The attorney with whom they consulted advised them to "get the tax situation straightened out" before they filed bankruptcy. (App. Appx. at 145-47.) On the advice of this attorney, the Debtors contacted an IRS Tax Advocate, who informed them that the employment taxes owed to the IRS constituted a "trust fund" belonging to the IRS that must be paid. The Advocate also told the Debtors that the IRS would be placing a lien on the property of JMS.

After the cessation of JMS's business operations, the Debtors continued to collect the outstanding accounts receivable of JMS. Because the automatic payments being withdrawn from JMS's Chase checking account for the promissory notes were causing the account to be overdrawn, the Debtors opened a new checking account on behalf of JMS at First Financial Bank and on March 3, 2006, began depositing JMS's collected receivables into this new account. Sums totaling $57,971.15 were deposited into this account, from which the Debtors paid the IRS a total of $36,485.95 on March 29 and 30, 2006. The IRS applied the payments to JMS's unpaid withholding taxes for the third quarter of 2005. The Debtors also paid from the First Financial Bank account several payroll checks that had previously bounced, state and local government taxes, and other business expenses, leaving a balance of $6,984.31 in the checking account. The IRS filed a Notice of Lien in July 2006.

On July 14, 2006, the Debtors filed a voluntary petitions for relief under chapter 7 of the Bankruptcy Code. Thereafter, Chase filed adversary complaints asserting that the Debtors had defaulted under the terms of the promissory notes and guaranty agreement by failing to make payments, and by willfully and intentionally causing the proceeds from the accounts of JMS to be transferred to other creditors without the consent of Chase. The complaints sought judgments of nondischargeability pursuant to 11 U.S.C. § 523(a)(6) for willful and malicious injury to Chase's property through the intentional depletion of its collateral. In their answers, the Debtors generally denied these allegations and raised as an affirmative defense the assertion that Chase's security interest could not attach to funds used to pay trust fund taxes.

Chase subsequently filed motions for summary judgment, contending that the Debtors intentionally converted Chase's collateral by using the proceeds of JMS's accounts receivable, which they knew were subject to Chase's security interest, to pay the outstanding withholding taxes owed to the IRS. Chase asserted that this "intentional conversion" constituted willful and malicious injury to its property under 11 U.S.C. § 523(a)(6) and sought nondischargeable judgments of $57,971.15, the full amount of the proceeds deposited into the First Financial Bank account. The Debtors filed cross-motions for summary judgment based on the affirmative defense set forth in their answers: that Chase's security interest never attached to the funds paid to the IRS because they were "trust funds" that were not property of JMS.

At the conclusion of oral argument on the cross-motions for summary judgment, the bankruptcy court orally granted Chase's motions and denied the Debtors' motions. The court concluded that the funds paid to the IRS were property of JMS in which Chase held a property interest. In accordance with this bench ruling, the bankruptcy court issued orders denying the Debtors' motions for summary judgment, granting Chase's summary judgment motions and awarding Chase judgment against each of the Debtors in the amount of $57,971.15. The Debtors' timely appeals followed.

## IV.   DISCUSSION

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt "for willful and malicious injury by the debtor . . . to the property of another entity." As with all exceptions to discharge, this exception is "narrowly construed in favor of the debtor." *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 306 (B.A.P. 6th Cir. 2004) (citing *Meyers v. I.R.S. (In re Meyers)*, 196 F.3d 622 (6th Cir. 1999)). Chase, as the party seeking the exception to discharge, bears the burden of proving § 523(a)(6)'s elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654, 659 (1991). Once Chase establishes a prima facie case, the burden shifts to the Debtors to present credible evidence that a defense to the liability exists. *Sears, Roebuck & Co. v. Miller (In re Miller)*, 70 B.R. 55, 56 (Bankr. S.D. Ohio 1987).

In order to prevail on its summary judgment motions, Chase had to establish that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law because it had an interest in the property at issue, there was an injury to that property interest, and the injury

was both willful and malicious. The bankruptcy court's decision determined only that by virtue of its security interest Chase held a property interest in the funds paid to the IRS. The bankruptcy court did not address the question of whether that property interest was injured and whether such injury, if any, was willful and malicious. Nor did the bankruptcy court address the issue of the appropriate amount of the judgment.[2]

In these appeals, the Debtors argue that the "substantial majority of the payments alleged by [Chase] to have been tortious, $36,972.15, were paid to the Internal Revenue Service for employment withholding 'trust fund' taxes . . . . They are not the corporation's property, but are a trust obligation; therefore [Chase] could not hold a security interest in them." (App. Br. at 22.) In support of this position, the Debtors rely on *Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S. Ct. 2258 (1990). In *Begier*, the Supreme Court addressed "the question whether a trustee in bankruptcy may 'avoid' (*i.e.,* recover) from the Internal Revenue Service (IRS) payments of certain withholding and excise taxes that the debtor made before it filed for bankruptcy." *Id.* at 55.

In *Begier*, a commercial airline was required to withhold taxes from its employees' wages and to collect excise taxes from customers. Because such taxes are "held to be a special fund in trust for the United States" pursuant to 26 U.S.C. § 7501,[3] they are often referred to as "trust-fund taxes." *Id.* at 56-7 (citing *Slodov v. United States*, 436 U.S. 238, 241, 98 S. Ct. 1778, 1782 (1978)). The airline fell behind in payments to the IRS, which then ordered the airline to deposit all trust fund tax obligations into a separate bank account. While the airline did not deposit funds sufficient to cover all trust fund obligations, it did stay current on the obligations for a period of time and paid a substantial amount from the separate account and its general operating funds.

Eventually, the commercial airline in *Begier* filed a petition for relief under chapter 11 of the Bankruptcy Code. The court-appointed trustee sought to avoid as preferential the entire amount paid

---

[2] Both the parties and the bankruptcy court focused on the payments made to the IRS and whether those funds were property of the corporation. However, only $36,972.15 of the $57,971.15 collected was paid to the IRS. Moreover, the sum of $6,984.31 remained in JMS's checking account at First Financial Bank.

[3] Section 7501 of title 26 provides "[w]henever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States." 26 U.S.C. § 7501.

-6-

by the debtor to the IRS in the 90 days before the bankruptcy filing pursuant to 11 U.S.C. § 547(b). The Supreme Court began its analysis by stating that:

> Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not "property of the estate." Nor is such an equitable interest "property of the debtor" . . . . [T]he issue . . . is whether the money [the debtor] transferred from its general operating accounts to the IRS was property that [the debtor] had held in trust for the IRS.

*Id.* at 59.

The Court first concluded that the debtor created a trust within the meaning of 26 U.S.C. § 7501 at the moment its customers paid it, in the case of excise taxes, and the moment it paid its employees, in the case of income taxes. *Id.* at 61-2. The Court then turned to the question of whether the *particular dollars* paid to the IRS from the debtor's general operating account were "property of the debtor." "Only if those particular funds were held in trust for the IRS do they escape characterization as 'property of the debtor.'" *Id.* at 62.

The Court acknowledged that unlike a common-law trust where particular property is set aside, § 7501 creates a trust in an abstract amount of dollars, rather than in actual dollars withheld. Therefore, common-law trust tracing rules are not applicable. However, the IRS is required to show some connection between the trust and the assets sought to be applied to a debtor's trust fund tax obligations. *Id.* at 66-7. Relying on House Reports regarding the 1978 restructuring of the bankruptcy law, the Court concluded that a debtor's act of voluntarily paying trust fund taxes is sufficient to establish the required connection. *Id.* As such, the debtor's payments of trust fund taxes from its general operating account were not transfers of "property of the debtor," but were transfers of property held in trust for the United States pursuant to § 7501, which, therefore, could not be avoided as preferential transfers. *Id.* at 67.

Chase asserts that *Begier* is distinguishable from the instant case because it did not address the relative priorities between the "trust-fund taxes" and perfected secured creditors. Chase instead relies on *Slodov v. United States*, 436 U.S. 238, 98 S. Ct. 1778 (1978). In *Slodov*, the debtor assumed control of several corporations that were delinquent in payment of federal taxes withheld from employees' wages. Thereafter, the corporations acquired sufficient funds to pay the taxes, but the debtor caused the corporations to use the funds to pay other expenses, with the result that the corporations' past-due taxes were never paid. Following the debtor's withdrawal from the

businesses, he filed an individual petition for relief under the Bankruptcy Code. The IRS filed a claim in the debtor's bankruptcy proceeding for the corporations' delinquent taxes under 26 U.S.C. § 6672, which imposes personal liability for taxes on certain persons required to collect and pay taxes.[4] The issue before the Supreme Court was whether the debtor was liable under § 6672 for unpaid taxes withheld from wages prior to his assumption of control of the various corporations.

The IRS argued that although at the time the debtor became responsible for collecting taxes, the "trust fund taxes" had been dissipated and the corporations had no liquid assets, § 6672 imposed civil liability on the debtor as a responsible person because funds received from sales after the debtor assumed control were impressed with a trust in favor of the IRS for payment of the overdue employment taxes. Further, the IRS argued that the debtor's willful use of these funds to pay other creditors violated the § 6672 obligation to "pay over" those funds. The Supreme Court concluded, however, that "[n]othing whatever in § 6672 or its legislative history suggests that the effect of the requirement to 'pay over' was to impress a trust on the corporation's after-acquired cash." *Id.* at 254. Comparing § 6672's language, which imposes liability for a willful failure to collect as well as failure to pay over, with the trust fund provision of 26 U.S.C. § 7501, which imposes a trust on "the amount of the taxes withheld or collected," persuaded the Court that "there must be a nexus between the funds collected and the trust created." *Id.* at 256.

> That construction is consistent with the accepted principle of trust law requiring tracing of misappropriated trust funds into the trustee's estate in order for an impressed trust to arise. . . . *[A] construction of § 7501 or § 6672 as imposing a trust on all after-acquired corporate funds without regard to the interests of others in those funds would conflict with the priority rules applicable to the collection of back taxes. . . . [S]ecured parties often will have interests in certain proceeds superior to the tax lien*, and it is unlikely, moreover, that corporations in the position of those involved here could continue in operation without making some payments to secured creditors under the terms of security agreements. Those payments may well take the form of cash or accounts receivable, which like other property may be subject to a security interest . . . .

*Id.* at 256-58 (emphasis added). Based on the foregoing, the Supreme Court held that:

---

[4] Section 6672 of title 26 provides, in pertinent part:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax of the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. . . .

> [Section] 7501 does not impress a trust on after-acquired funds, and the responsible person consequently does not violate § 6672 by willfully using employer funds for purposes other than satisfaction of the trust-fund tax claims of the United States when at the time he assumed control there were no funds with which to satisfy the tax obligation and the funds thereafter generated are not directly traceable to collected taxes[.]

Id. at 259-60.

The Debtors attempt to draw a distinction between *Begier* and *Slodov* based on the fact that in *Begier* the taxes had been voluntarily paid, while in *Slodov* the taxes were never paid. They conclude, therefore, that *Begier* is applicable here because JMS also voluntarily paid the delinquent taxes. As such, they assert that the voluntary act of paying the "trust fund tax" obligation is sufficient to establish the required nexus between the "amount" held in trust and the funds paid, and that those funds were not corporate property. According to the Debtors, because Chase held a security interest in corporate funds only, Chase's security interest was not impaired by the payment of the delinquent taxes. Additionally, the Debtors reason, because the taxes were paid with non-corporate property, the IRS did not have to put a lien on the funds and the "normal rules" associated with lien priorities are irrelevant.

While understandable, the Debtors' reliance on *Begier* is misplaced. In *Begier*, there was no other secured creditor with a competing interest in the property at issue, and the Court did not address priorities between trust fund taxes and perfected secured creditors. We agree with the bankruptcy court that the Supreme Court's analysis in *Slodov* is applicable to this case.[5] As explained in *Slodov*, no trust is automatically created in funds received by a debtor after trust fund taxes have been dissipated. Thus, the funds paid to the IRS in the present case were not in the first instance trust funds. While *Begier* advises that a trust in after-acquired funds may be created by the fact of payment to the IRS, *Slodov* instructs that the imposition of such a trust is subject to the pre-existing interest of a secured creditor in these funds. Because Chase was a perfected secured creditor with a valid security interest in the accounts receivable of JMS, its interest in JMS's after-acquired funds was superior to that of the IRS, notwithstanding the Debtors' payment of the funds to the IRS.

---

[5] At the conclusion of the hearing on the cross-motions for summary judgment, the bankruptcy court stated that it "believes that the *Slodov* case is applicable here and describes the present situation." (App. Appx. at 186.)

Moreover, it is worth noting in this regard that the IRS did not file its lien until July 2006, more than three months after the Debtors paid the IRS. Even if the IRS lien had been filed earlier when the IRS Tax Advocate had so indicated, the federal tax lien would have been inferior to that of Chase in the accounts receivable generated by JMS prior to the filing of the tax lien. *See* 26 U.S.C. § 6323(a) ("The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof...."); *United States v. McDermott*, 507 U.S. 447, 449, 113 S. Ct. 1526, 1528 (1993) (Priority of federal tax liens is governed by the common law principle of "the first in time is the first in right."); *Power House Ford Engines, Inc. v. Wind Machine Sales & Serv., Inc. (In re Wind Machine Sales & Serv., Inc.)*, 161 B.R. 1000, 1011 (Bankr. E.D. Cal. 1993) (creditor with perfected security interest enjoyed priority over subsequent federal tax lien as to debtor's accounts receivable created prior to filing of tax lien). To accept the Debtors' argument in these cases would produce the anomalous result that mere payment by the Debtors of the accounts receivable proceeds to the IRS somehow destroyed Chase's interest in these funds or elevated the interest of the IRS to a position superior to that of Chase, even though absent payment, and even if the IRS had filed a lien, its interest in the accounts receivable in question would have been inferior to that of Chase. We are not convinced that this is the law.

Based on the foregoing, we hold that the bankruptcy court correctly concluded that Chase had an interest in the funds paid by the Debtors to the IRS. Accordingly, the bankruptcy court's denial of the Debtors' motions for summary judgment was appropriate. Nonetheless, summary judgment in favor of Chase should have been denied because there are genuine issues of material fact as to the other elements of § 523(a)(6): whether there was an injury to Chase's property and, if so, whether that injury was both willful and malicious. Additionally, because the parties' summary judgment motions only addressed the issue of whether monies totaling $36,485.95 paid to the IRS were property of Chase, summary judgment in favor of Chase in the amount of $57,971.15 may have been inappropriate. Remand is necessary not only to consider the other elements of § 523(a)(6) as to the monies paid to the IRS, but also to consider whether the elements of nondischargeability have been met with respect to the remaining monies alleged to have been converted by the Debtors.

## V.  CONCLUSION

For the foregoing reasons, the orders of the bankruptcy court granting summary judgment in favor of Chase are VACATED and these adversary proceedings are REMANDED for further proceedings consistent with this opinion.